75 A.2d 248 (1950)
DIAMOND STATE LIQUORS, Inc.,
v.
DELAWARE LIQUOR COMMISSION.
Court of General Sessions of Delaware, New Castle.
June 23, 1950.
*250 James R. Morford, Wilmington, for the appellant.
Daniel J. Layton, Sr., Georgetown, for the Liquor Commission.
Before RICHARDS, C. J., and CAREY, J.
RICHARDS, Chief Justice.
The application of Diamond State Liquors, Inc., for a license to sell alcoholic liquor for consumption off the premises, at 1811 Lancaster Avenue, Wilmington, was presented to the Liquor Commission on May 25, 1949, after it had been advertised in two different newspapers in the county in compliance with the provision of the Liquor Control Act, Rev.Code 1935, § 6130 et seq.
Said application was accompanied by a certificate signed by 75 persons who resided in the neighborhood, likewise a certificate signed by 158 persons who were employed in the neighborhood, to the effect that a license granted at 1811 Lancaster Avenue as applied for, would serve the convenience and necessity of the residents of the neighborhood and members of the community who are consumers or potential consumers of alcoholic liquors; and that there was a real and substantial need for a licensed package store, such as the one applied for, at the location in question.
Within ten days after the filing of said application, and before the license was issued, a protest against granting a license for the location named in said application, signed by 55 residents of the vicinity was filed with the Commission, setting forth that it was the belief of the protestants that there are sufficient licensed places in the neighborhood for the convenience of the public.
Consequently, the requisite notice was given the applicant and the protestants that a hearing would be conducted by the Commission to consider the application and the protests, in the Public Building, Wilmington, Delaware, at 2:00 P. M., on Wednesday, June 29, 1949.
It was brought out at the hearing that Front and Union Streets and Lancaster Avenue is the general shopping district for a large area which has built up in that section of Wilmington, a great portion of which is a restricted residence district, and that a sub-post office has been established in the 1800 block on Lancaster Avenue.
The plot of the locality which is part of the record, discloses that there is a licensed package store at 1918 Lancaster Avenue, where alcoholic liquor is sold for consumption off the premises, about a block and a half away from the location where the applicant desires to obtain a license; a taproom with a license to sell alcoholic liquor both on and off the premises at 1925-1927 Lancaster Avenue, about two blocks away; a licensed package store, where alcoholic liquor is sold for consumption off the premises at 211 North Lincoln Street, about two and one half blocks away; a licensed taproom at 201 North Union Street, between three and four blocks away; a package store on Fourth Street, between Scott and duPont Streets, between four and five blocks away, where alcoholic liquor is sold for consumption off the premises and a package store on Clayton Street near Third, between four and five blocks away, where alcoholic liquor is sold for consumption off the premises. In addition it appears that there are a number of licensed places in the area, either restaurants or taprooms, where alcoholic liquor may be obtained for consumption on the premises.
*251 Attention was called to the fact that many of the residents of the neighborhood live closer to the location where the applicant desires to obtain a license, than to the locations where licenses already exist. The distance cannot be great, however, as it appears that one of the existing licensed places is only a block and a half from the place where the present license is asked for, and the farthest existing licensed place is between four and five blocks away.
There was testimony at the hearing that public necessity and convenience demands that the application of Diamond State Liquors, Inc., for a license to sell alcoholic liquor at 1811 Lancaster Avenue, for consumption off the premises, be granted; and also testimony to the effect that the granting of an additional license in the locality is not demanded by public necessity or convenience.
The number of adult persons who live in the area around Front and Union Streets and Lancaster Avenue was also shown.
All these facts appear from the record and must have been considered by the Liquor Commissioner before passing upon the appellant's application for a license.
The Liquor Commission determined that the license should not be granted on the ground that there are sufficient licensed premises in the locality and that the granting of the license is not demanded by public convenience or necessity.
An appeal from the decision of the Commission was taken to this Court within the necessary ten days.
When such an appeal is taken the Act provides, that it shall be decided by the Court from the record, and that the Commission's finding of fact shall not be set aside unless the Court shall determine that the record contains no substantial evidence that would reasonably support such finding.
The Liquor Control Act, in defining the functions, duties and powers of the Liquor Commission, includes the duty and power to grant, refuse or cancel licenses for the sale of alcoholic liquor.
Said Act sets forth a number of reasons for which the Commission may refuse to grant an application for a license if it has reasonable ground to believe that the reason relied upon is sufficient. One of the reasons is the one relied upon by the Commission in the case, namely, "That there are sufficient licensed premises in the locality or that the granting of a license in the locality set out in the application is not demanded by public interest or convenience." Rev.Code 1935, § 6151(1).
In order to determine whether an application shall be granted, or refused for any of the reasons enumerated in the Act, calls for an exercise of discretion by the Liquor Commission. This discretion should not be exercised arbitrarily but should be based upon reasonable findings of fact which should appear in record. The record before us shows that the Commission had before it a number of witnesses who testified as to the general conditions in the area surrounding the location where the applicant desires to obtain a license; the conditions in the exact location where said license is desired; the number of other places where a license to sell alcoholic liquor has been obtained in that locality and their nearness to the place where the present license is asked for.
It was brought out at the hearing that Lancaster Avenue is a through thoroughfare for persons coming to and leaving Wilmington, who would find it more convenient to stop at the location where the applicant desires to obtain a license than in a more congested portion of the city.
After considering all of these facts the Liquor Commission refused to grant the license. We are unable to find that in doing so it acted arbitrarily, or that its finding of fact is not reasonably supported by the record.
Whether the granting of a license to sell alcoholic liquor at a particular place, is demanded by public convenience or necessity, is a question upon which a great difference of opinion may exist. It does not mean that there should be a licensed liquor store or place of business, next door to every person, or across the street, or in the same block. This question must be determined by some person or agency. The Liquor Control Act of this State vest the authority to determine it in the Liquor Commission.
*252 We may not agree with the decision of the Liquor Commission refusing to grant a license in this case, but that does not necessarily mean that it acted arbitrarily.
It is admitted that there is a licensed package store, where alcoholic liquor is sold for consumption off the premises, at 1918 Lancaster Avenue, a block and a half away from the location where the applicant has petitioned for a license, and there is no showing that it is not able to meet the demands of public convenience or necessity. As far as the record before us discloses, it is large enough and carries a stock of liquor sufficient to supply the requirements of that community. It is also admitted that there are other licensed package stores and places where alcoholic liquor is sold in the general locality which supply the people of that area.
Mention was made of the fact that the parking conditions on Lancaster Avenue were congested but that is something which people have to contend with everywhere today. It does not appear that it would be any better a block and a half away. This condition was brought to the attention of the Commission, and no doubt was considered by it together with all the other facts and circumstances. In any event, such a condition should not be the controlling factor, in determining whether a license should be granted.
Prior to the enactment of the Liquor Control Act, the illegal sale of alcoholic liquor in this State had grown to an alarming extent. The purpose of the Act was to remedy this condition and to provide the people of every community with a reasonably convenient opportunity to make a legal purchase of alcoholic liquor. This purpose should always be borne in mind by the Liquor Commission in considering the application for a license to sell alcoholic liquor, and its final determination to grant or refuse such an application should be based upon a sound legal discretion. Whether there was an exercise of a sound legal discretion in considering a particular application for a license, depends upon what the Commission did to learn of the facts in connection with said application and the existing conditions in the locality.
In the Commission's decision of this application, we find the following statement:
"The Commission had determined to grant the license, but before the issuance thereof and within ten days of the filing of the application, protests there against signed by at least ten residents of neighborhood where the license would operate, if granted, were filed with the Commission, and as provided by 6150, Sec. 21 of the Liquor Control Act, a hearing was held by the Commission on June 29, 1949, at two o'clock P. M. at the Public Building, Wilmington, Delaware, for the purpose of considering said application and protest * * *."
Paragraph 6150, Sec. 21 of the Act provides, that if the Commission has determined to grant the application, but before the license is issued a protest is filed, a hearing must be held. It was argued that in view of the fact that the Commission had decided to grant the license before the protest and hearing, it was incumbent upon it to show such facts as would be sufficient to cause it to change its determination. The hearing was held after the protest was filed and after hearing the testimony of the witnesses who appeared before it, the Commission must have gained additional information on the question of whether a license to sell alcoholic liquor at 1811 Lancaster Avenue, for consumption off the premises, was demanded by public interest or convenience. In deciding that question it was not incumbent upon the Commission to state the particular portion of the information or testimony upon which it based its decision. After the protest was filed the Commission was required to have a hearing and it was its duty to consider all of the information which it had before arriving at a decision.
We cannot agree that persons who travel on Lancaster Avenue for the purpose of going to and leaving Wilmington, are inhabitants of the community in question and as such entitled to make a legal purchase of alcoholic liquor with reasonable convenience. *253 As a matter of fact, persons so traveling may be able to find more convenient places to purchase alcoholic liquor than 1811 Lancaster Avenue.
At the hearing before this Court the attorney for the appellant stated, that he called for certain witnesses at the hearing before the Commission whom he desired to question about certain petitions which they circulated and when it appeared that they were not present requested the Commission to issue subpoenas for them which it refused to do, and he was, therefore, unable to secure their testimony.
In this connection, it must be remembered that the Liquor Commission is an administrative body and has no powers other than those conferred upon it by the statute by which it was created. 70 C.J. page 35. Paragraph 6134, Sub-Section 10 of the Act, gives the Commission authority to issue subpoenas and compel the attendance of witnesses when hearing complaints in regard to the appointment of, or conduct of business in, any establishment where alcoholic liquor is licensed to be sold. In case any witnesses so summoned refuse to testify without reasonable cause, the Commission may certify that fact to the Court of General Sessions of the County in which the hearing is held and said Court is authorized, in its discretion, to proceed against the person so refusing to testify as for contempt and to punish such person, if found guilty. This is the only place in the Act where the Commission is authorized to subpoena witnesses and it must be admitted that this is in a limited manner.
This Court when hearing an appeal from the Liquor Commission has the discretionary power under Paragraph 6150, Section 21 as amended, to hear additional testimony. It may also issue subpoenas for witnesses but it was not requested to do so in this case.
In the absence of express statutory power, the practice is well established in this State, that in proceedings before administrative bodies, such as the Liquor Commission, the interested parties should produce their witnesses at their own expense. Otherwise, the State or counties might often be saddled with heavy costs in proceedings of this character. So far as we know this practice has always been followed by the Liquor Commission in considering applications for licenses and protests thereto. In view of this well recognized method of dealing with matters of this character, we are of the opinion that the Commission was justified in refusing to subpoena witnesses for the applicant in this case.
Another reason relied upon for reversing the decision of the Commission, or sending the case back to it for further consideration, is that the applicant was limited to the testimony of six witnesses on a particular point. It was brought to our attention that after six witnesses had been called for the applicant, the testimony of other named witnesses, who were present, was offered and the Commission refused to hear them. It was stipulated, however, that they would testify to the same effect as the witnesses who were heard. Counsel for the applicant admits the validity of the rule as applied to the trial of civil cases, but contends that an administrative body vested with the power of determining a matter of public convenience or necessity cannot limit the number of witnesses and can be required to hear five hundred.
Whether a license to sell alcoholic liquor in a certain community is demanded by public necessity or convenience, is not to be determined by the number of witnesses who may be called for or against the application for such a license. If that were the case, the task of the Liquor Commission would be much easier for it would simply have to determine whether the greater number of witnesses were in favor of or against the application. In addition the Commission would have no discretion in the question but would be bound by the expression of opinion as shown by the greater number of witnesses.
By reason of the possibilities of the commodity, the sale of alcoholic liquor has always been more restricted than the sale of other commodities. We feel that it was for this reason that the Legislature required the Liquor Commission to exercise a certain amount of discretion in passing *254 upon an application for a license. The Commission should hear a sufficient number of witnesses to fully inform it of the conditions existing in the community where a license is desired and then determine whether in its sound discretion the license is demanded by public necessity or convenience.
We are of the opinion that the evidence produced at the hearing before the Commission was sufficient to fully inform it of the circumstances existing in the community surrounding 1811 Lancaster Avenue and that its decision should not be disturbed.